

**Smith Katzenstein Furlow LLP**

*Attorneys at Law*

The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, Delaware 19899
(Courier 19801)
Phone (302) 652-8400
Fax (302) 652-8405
www.skfdelaware.com

Craig B. Smith
Robert J. Katzenstein
David A. Jenkins
Laurence V. Cronin
Michele C. Gott
Kathleen M. Miller
Roger D. Anderson
Joelle E. Polesky
Dominick T. Gattuso

May 27, 2004

**VIA COURIER**

Honorable John J. Hughes
United States Magistrate Judge
United States District Court
Clarkson S. Fisher Federal Building
402 East State Street
Trenton, NJ 08608

RE:  *Travellers International, Inc. v. NexMed, Inc.*
     04 Civ. 176 (GEB) (JJH)

Dear Magistrate Judge Hughes:

This letter is in response to defendant NexMed, Inc.'s ("Defendant" or "NexMed") letter dated May 24, 2004 (the "Defendant's Letter"), requesting that this Court quash the subpoena served on SDS Capital Partners ("SDS") and issue a protective order. For the following reasons, Defendant's motion should be denied:

1. Defendant lacks standing to assert the rights of SDS, a non-party;

2. The discovery sought by plaintiff Travellers International, Inc. ("Travellers") through its discovery requests propounded on Defendant and the subpoena served on SDS is directly relevant to Travellers's claims and, consistent with Fed. R. Civ. P. 26(b)(1), is "reasonably calculated to lead to discovery of admissible evidence";

3. The discovery is neither unduly burdensome nor overbroad; and

4. The discovery sought by Travellers through the subpoena may not be available from NexMed.

Further, as discussed herein, Travellers is willing to enter into a confidentiality agreement with SDS to further protect the confidentiality of the documents and other information disclosed by SDS.

DTG0235.WPD

Honorable John J. Hughes
May 27, 2004
Page 2

**Background**

This action arises out of a consulting agreement between Travellers and NexMed, dated January 27, 2003 (the "Consulting Agreement").[1,2] Under the agreement, Travellers agreed to provide "investor relations and financial consulting services" to NexMed, because its stock was at risk of being delisted from NASDAQ.

During December 2002, NexMed's stock failed to maintain a minimum bid price of $1.00 over thirty consecutive trading days. Additionally, NexMed's stockholder equity had fallen to $3.6 million, well below the $10 million required by NASDAQ. As a result, NexMed received notice from NASDAQ that its stock was subject to being delisted pursuant to Marketplace Rules 4450(a)(3) and (a)(5). (*See* Ex. 3 ; Compl. ¶¶ 6-7). Continued listing of its stock on NASDAQ was critical to NexMed, because the company was cash-starved and awaiting the results of important clinical trials of some of its key products, which would not be available until late spring 2003. (Compl. ¶ 9). If NexMed's stock was delisted, the company would have had considerable difficulty obtaining additional financing, and would likely have run out of cash. NexMed's predicament led to the Consulting Agreement.

On January 27, 2003, Travellers began performance of the Consulting Agreement. On February 11, 2003, NexMed received a letter from NASDAQ stating that the company's stock had traded above $1.00 for ten consecutive days and was no longer subject to being delisted for that reason. (Ex. 4). However, NexMed's stock remained subject to being delisted because the company's stockholder equity remained well below $10 million. (Ex. 5). In or about February 2003, Travellers identified two potential financing deals for NexMed - a share exchange agreement and a term sheet

---

[1] For the convenience of the Court, a copy of the Complaint (with exhibits) is attached as Exhibit 1. The Consulting Agreement is attached as an exhibit to the Complaint and as Exhibit B to Defendant's Letter.

[2] Contrary to Defendant's assertion, the date the parties signed the agreement is a disputed fact. (*Compare* Defendant's Letter, at 2 n.2 *with* Compl. ¶ 17 *and* Exhibit 2 at Response No. 4). Notwithstanding this disputed fact, Travellers began its performance under the Consulting Agreement on January 27, 2003, the date of the agreement. (*See id.*).

DTG0235.WPD

Honorable John J. Hughes
May 27, 2004
Page 3

for $9 million in investor financing. (*See* Exs. 6 and 7). Neither financing transaction closed, and Travellers continued to search for potential investors.

Although NexMed purportedly terminated the Consulting Agreement and refused to issue the warrants to Travellers "based upon NexMed's 'assessment of [Travellers'] [sic] performance to date'" (Defendant's Letter, at 2), NexMed inexplicably faxed an addendum to the Consulting Agreement to Travellers on April 9, requesting an additional thirty days to issue the warrants. (*See* Compl. ¶ 20; Ex. 8). During a conversation with Marc Hazout ("Mr. Hazout"), the President of Travellers, on April 9, Dr. Joseph Mo ("Dr. Mo"), the President, Chief Executive Officer and Chairman of the Board of Directors of NexMed, explained that the Addendum was necessary to avoid disclosing the issuance of the warrants in the company's 10-Q filing for the first quarter, which ended on April 11, 2003. According to Mr. Hazout, Dr. Mo never expressed any dissatisfaction with Travellers's performance during that conversation or hinted that NexMed would not issue the warrants. (*See* Compl. ¶¶ 21-24). Believing that NexMed would act in good faith and issue the warrants on May 31, Mr. Hazout signed and returned the Addendum to NexMed. (*Id.* at ¶¶ 24-25).

If NexMed was not satisfied with Travellers's performance and did not intend to issue the warrants, why did Dr. Mo request that Travellers execute the Addendum? An email written by Vivian Liu ("Ms. Liu"), a NexMed officer, dated April 15, 2003, sheds light on that question:

> Last I heard, Dr. Mo issued a termination notice. Subsequently, they talked about pushing it out to 5/31 but the other party hasn't confirmed it. So I'm not sure what's the status.
>
> *Right now I told Dr. Mo that I don't want to rock the boat by forcing the issue with the guys. After we close will be a different story.*

(Ex. 9 (emphasis added); *see also* Ex. 10). As Ms. Liu's email implies, NexMed likely never intended to issue the warrants, not because Travellers's performance was unsatisfactory (the evidence demonstrates otherwise), but because NexMed had located alternative financing (an $8 million round of financing with SDS Capital Partners, among others (the "SDS Financing Transaction")) and sought to avoid disrupting the SDS Financing Transaction at all costs. (*See* Compl. ¶¶ 25, 56-63).

DTG0235.WPD

Honorable John J. Hughes
May 27, 2004
Page 4

**The Discovery Dispute**

Pursuant to its rights under Fed. R. Civ. P. 26, Travellers requested information and documents related to the SDS Financing Transaction and NexMed's failure to issue the warrants through Plaintiff's First Request for Production of Documents and Plaintiff's First Set of Interrogatories. (*See* Defendant's Letter, Exs. D and E). Specifically, in document requests 22-24 and 29-30, Travellers requested "all documents that refer or relate" to:

- "any communications or discussions among directors, officers, employees or agents of Defendant and any other person concerning the Warrant Option in Section 2.1(c) of the Consulting Agreement";

- "the decision by NexMed not to issue Warrants to Travellers, pursuant to Section 2.1(c) of the Consulting Agreement";

- "any communications or discussions among directors, officers, employees or agents of Defendant and/or any other person concerning the decisions by NexMed not to issue Warrants to Travellers, pursuant to Section 2.1(c) of the Consulting Agreement";

- "any round of financing involving SDS Capital Partners, The Tail Wind Fund, Clarion Capital Partners or other institutional investors, which closed in or about April 2003";

- "Produce all documents that refer or relate to any communications or discussions among directors, officers, employees or agents of Defendant and SDS Capital Partners, The Tail Wind Fund, Clarion Capital Partners or other institutional investors, including any director, partners, officer, employees, agent or other representative of those entities, concerning any round of financing completed in or about April 2003."

(Defendant's Letter, Ex. D).

DTG0235.WPD

Honorable John J. Hughes
May 27, 2004
Page 5


In interrogatories 13, 15-16 of its First Set of Interrogatories, Travellers asked NexMed to:

- "Identify the participants to and describe in detail any communications or discussions among directors, officers, employees or agents of Defendant and/or any other person concerning the Warrant option in pursuant to Section 2.1(c) of the Consulting Agreement or the Addendum; whether each person maintains any files related thereto; and, whether any documents from such files have been produced pursuant to Plaintiff's First Request for Production of Documents";

- "Identify the participants to any communications between NexMed and SDS Capital Partners, The Tail Wind Fund, Clarion Capital Partners or any other investors concerning any round of financing completed in or about April 2003";

- "Identify all documents related to any round of financing completed in or about April 2003 involving SDS Capital Partners, The Tail Wind Fund, Clarion Capital Partners, among others; and, identify whether those documents have been produced pursuant to Plaintiff's First Request for Production of Documents."

(Defendant's Letter, Ex. E).

NexMed refused to respond to Travellers's discovery requests. (*See* Defendant's Letter, at 4 and Exs. D and E thereto).

Subsequently, counsel for the parties discussed the relevance of these discovery requests and, through its counsel, Travellers explained that the discovery was relevant to its claim that NexMed, acting in bad faith, terminated the Consulting Agreement, withdrew the Addendum, and refused to issue the warrants to secure the SDS Financing Transaction, even though Travellers had performed under the Consulting Agreement and was entitled to the warrants. Travellers believes that NexMed either requested the Addendum to avoid issuing the warrants before the SDS Financing Transaction closed on the belief that issuing the warrants might disrupt the transaction or, that NexMed's termination of the agreement and refusal to issue the warrants was a condition precedent to the SDS Financing Transaction, and done at the behest of SDS. This latter condition is often employed by venture capital firms involved in financing transactions to avoid dilution of their interest in a company. During these discussions, NexMed's

Honorable John J. Hughes
May 27, 2004
Page 6

counsel was put on notice that Travellers would move to compel responses to the discovery requests, if NexMed was unwilling to do so on its own.

In a recent telephone conversation, NexMed's counsel stated that NexMed was unable to retrieve email for the period between early February and early April 2003, which coincidentally is the same period of time SDS and NexMed negotiated the SDS Financing Transaction. Thereafter, Travellers served a subpoena on SDS, seeking testimony and documents related to the SDS Financing Transaction and "[a]ny discussions between SDS and NexMed concerning the issuance of warrants" to Travellers, in part to obtain a complete record (which will be all but impossible in light of NexMed's "lost" email). (*See* Defendant's Letter, Ex. A).

Travellers's discovery requests to NexMed and the subpoena served on SDS are proper under Fed. R. Civ. P. 26 in that they are tailored to the discovery of evidence relevant to a claim in the Complaint, and may lead to discovery of admissible evidence. Further, in light of NexMed's refusal to respond to proper discovery requests and preserve relevant, material evidence, Travellers has no other avenue through which to obtain certain of the discovery sought.

## Discussion

### NexMed Lacks Standing To Seek a Protective Order On Behalf of SDS Capital Partners.

NexMed lacks standing to quash the subpoena or seek a protective order on behalf of SDS, a third party. *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 160 n.2 (D. Del. 1985) ("Ordinarily, a party has no standing to object to discovery of a nonparty."); *see also Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 234 (N.D .Ind. 1992); *Bush Development Corp. v. Harbour Place Associates*, 632 F. Supp. 1359, (E.D. Va. 1986); 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.101[2][b] (3d ed. 2004). To the extent that NexMed seeks to assert the rights of SDS in moving to quash the subpoena and obtain a protective order, this Court should deny NexMed's request.

### Travellers Seeks Information Relevant to Its Claims.

Travellers's discovery requests are narrowly tailored to obtain information relevant to its claims. "Parties may obtain discovery regarding any matter, not privileged, *that is*

Honorable John J. Hughes
May 27, 2004
Page 7

*relevant to the claim or defense of any party* . . . Relevant information need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added). "Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case." *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, NO. CIV.A.00-3058, 2002 WL 32349387, at *3 (E.D. Pa. Jan. 8, 2002). "'Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. As a result, discovery rules are to be accorded broad and liberal construction.'" *Id.* (*quoting Northern v. City of Philadelphia*, No. CIV.A.98-6517, 2000 WL 355526, at *1 (E.D. Pa. Apr. 4, 2000)). As previously discussed, Travellers seeks information related to the SDS Financing Transaction to ascertain whether NexMed terminated the Consulting Agreement, sought and withdrew the Addendum, and refused to issue the warrants in bad faith.

Defendant cites *Palumbo v. Shulman*, 97 Civ. 4314, 1998 U.S. Dist. LEXIS 11467, at *10, 14 (S.D.N.Y. July 27, 1998) in support of its contention that the discovery Travellers seeks is irrelevant. *Palumbo*, however, is clearly distinguishable. In that case, the plaintiffs sought discovery from defendants to define "gross income," a key term of an oral agreement at issue in the litigation. In the absence of a written agreement between the parties, plaintiffs sought discovery of documents from defendants "establishing the terms of their agreements with their non-party clients who paid a percentage of their 'gross income' as compensation to defendants for the services defendants rendered." *Id.* at *4. The Court denied plaintiffs' discovery because the "business management agreements of the non-parties were independently negotiated at different times, and under different circumstances; they have no connection to [plaintiffs'] contract with [defendants]." *Id.* at *11.

In the instant case, Travellers is not seeking discovery related to the SDS Financial Transaction to define a term of the Consulting Agreement. Rather, the discovery sought is relevant to Travellers's claim that NexMed acted in bad faith and breached the Consulting Agreement. Moreover, the discovery is narrowly tailored to achieve that purpose.

Honorable John J. Hughes
May 27, 2004
Page 8

### The Discovery Sought Is Not Unduly Burdensome or Overbroad.

The discovery sought by Travellers is not unduly burdensome.[3] Defendant argues that "courts have heavily weighed privacy concerns when a party seeks private financial or company information, especially of non-parties," and cites a number of cases in support of its argument. (*See* Defendant's Letter, at 6-7). Once again, however, Defendant misses the mark. Travellers is *not* seeking discovery of financial or proprietary company information of SDS, or NexMed for that matter. Travellers's has made abundantly clear to Defendant's counsel on several occasions that Travellers only seeks discovery of the terms and conditions, both express and implied, of the SDS Financing Transaction, including the communications between the parties to that agreement, for the limited purpose previously discussed. Travellers's discovery requests are narrowly tailored to achieve this end. Furthermore, to the extent this Court determines that Travellers's discovery requests are overbroad (and Travellers strongly believes they are not), this Court can further narrow the scope of those requests. *See* Fed. R. Civ. P. 26(c), 45(c)(3)(B).

### Certain Discovery Sought From SDS May Not Be Available from NexMed.

As previously discussed, NexMed's counsel has indicated that the company has been unable to recover email for the period from February 2003 through early April 2003. NexMed also failed to produce email from an AOL email account used by Dr. Mo for business (and possibly personal) communications concerning the Consulting Agreement during this period of time.[4] Coincidentally, this is the same period of time

---

[3]SDS has not sought to intervene in this action to show that the discovery sought will impose an undue burden such that the subpoena should be quashed. *See* Fed. R. Civ. P 45(c)(3)(A). Rather, it appears that SDS is willing to sit on the sidelines until this court rules. Presumably, SDS will seek leave to intervene in this action and move for a protective order in the event this Court denies NexMed's request, thereby further delaying the discovery process and allowing the Defendant two bites at the apple.

[4]In response to a request for relevant email from Dr. Mo's AOL email account, NexMed's counsel stated that AOL automatically deletes email after thirty days, but agreed to investigate the issue further to determine if the email could be retrieved. To date, NexMed's counsel has not produced email from the AOL account nor has counsel

Honorable John J. Hughes
May 27, 2004
Page 9

that SDS and NexMed negotiated the SDS Financing Transaction and NexMed terminated the Consulting Agreement and refused to issue the warrants. Further, as a frequent international business traveler, Dr. Mo relies on email to communicate with business associates. NexMed's failure to produce the email is highly prejudicial to Travellers. Therefore, to the extent that relevant email can be obtained from SDS (with respect to the parties' communications regarding the SDS Financing Transaction), Travellers should be permitted access to the material through the liberal discovery standards underlying Rule 26.

### The Confidentiality Agreement Will Adequately Protect NexMed and SDS.

Though the testimony and documents that Travellers seeks may include some documents that fall within Fed. R. Civ. P. 45(c)(3)(B), Travellers has already entered into a confidentiality agreement with NexMed that restricts the disclosure and use of documents and other information marked confidential by NexMed. In fact, NexMed has already produced confidential documents pursuant to that agreement. Therefore, NexMed has no basis (let alone standing) to assert Rule 45(c)(3)(B) in support of its request to quash the SDS subpoena or to obtain a protective order. Moreover, Travellers is willing to execute a confidentiality agreement with SDS that would restrict the disclosure of confidential information, thereby quelling any fears that SDS will be put at a commercial disadvantage due to the production of sensitive documents pursuant to the subpoena.

For the foregoing reasons, Plaintiff Travellers International, Inc. respectfully requests that this Court deny Defendant NexMed, Inc.'s motion to quash the subpoena served

---

indicated whether the email cannot be recovered.

DTG0235.WPD

Honorable John J. Hughes
May 27, 2004
Page 10

on SDS Capital Partners and for a protective order. Further, to the extent that NexMed is in possession, custody or control of documents and other information responsive to Travellers's discovery requests outlined above, Travellers respectfully requests that this Court issue an order compelling Defendant to respond to Plaintiff's discovery requests.

Sincerely,

Dominick T. Gattuso

cc: Joel Forman, Esquire (by email and Federal Express)
    Dora Strauss, Esquire (by email and Federal Express)
    Leonard E. Seaman, III, Esquire (by email)
    Robert J. Katzenstein, Esquire

DTG0235.WPD